IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )   2:14-cr-00121-9 |
| | ) |
| DAVID BILICIC, | )   Chief Judge Mark R. Hornak |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Defendant David Bilicic was sentenced to ten months incarceration on October 29, 2020 for violating his conditions of supervised release. He is now being held at the Allegheny County Jail on a U.S. Marshal's detainer as a result of that sentence, and is scheduled to be released on May 29, 2021. Mr. Bilicic now brings a Motion to Modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that he has a chronic lung condition that constitutes an "extraordinary and compelling reason" warranting compassionate release because it increases his risk of contracting severe illness from COVID-19. (ECF No. 975.) He therefore requests that the remainder of his sentence be modified to house arrest on an ankle monitor.

The Government filed a response in opposition to the Motion. (ECF No. 977.) After the Court directed the submission of any medical records in support of Mr. Bilicic's motion within 14 days of the Government's response, defense counsel submitted Mr. Bilicic's medical records from the Allegheny County Jail. (ECF No. 983.) Mr. Bilicic did not file a reply to the Government's response. The Government filed a second response in opposition amending its initial response brief to address the addition of the medical records. (ECF No. 989.) This matter is now ripe for disposition.

1

Although the Court finds that the Defendant's Motion is properly before it, the Court concludes that release is not warranted for two reasons. First, Mr. Bilicic has failed to establish that his medical conditions are sufficiently severe so as to constitute an "extraordinary and compelling" reason that could warrant his release under the First Step Act. Second, even if Mr. Bilicic had established the existence of extraordinary and compelling reasons, the Court's consideration of the factors set forth in 18 U.S.C. § 3553(a) would yield the conclusion that the Defendant's substantial criminal history and the length of time left on his sentence weigh against his release. Instead, the Court concludes that Mr. Bilicic's sentence remains necessary to prevent danger to the community, to deter the commission of future crimes by the Defendant, and to promote respect for the law. Thus, the Mr. Bilicic's Motion for Reduction in Sentence pursuant to § 3582(c)(1)(A)(i) at ECF No. 975 is DENIED without prejudice subject to its reassertion should circumstances warrant.

I. **BACKGROUND**

Mr. Bilicic pled guilty to one count of Conspiracy to Possess with the Intent to Distribute Cocaine in April 2015. (ECF No. 389.) He was sentenced as a result to 12 months and one day of imprisonment to be followed by 60 months of supervised release. (ECF No. 449.) Mr. Bilicic was released from the custody of the BOP on September 13, 2016. His 5-year term of supervised release is set to expire on September 12, 2021. (ECF No. 818, at 2.)

On July 17, 2020, the Probation Office filed a petition seeking the revocation of Mr. Bilicic's supervised release based on his arrest on new state criminal charges and failure to report contacts with law enforcement. (Doc. No. 945). That petition was then incorporated as a supplement to two previous petitions filed in May 19 and July 6, 2020 that sought the revocation of Mr. Bilicic's supervised release based on: 1) new criminal charges against him, 2) failure to

report contacts with law enforcement, 3) associations with persons engaged in criminal activity, 4) positive urinalysis tests for cocaine and opiates, 5) noncompliance with and unsuccessful discharge from treatment, and 6) suspension from the RISE program. *Id.*

In detail, Mr. Bilicic is alleged to have violated his supervised release in the August 2019 to July 2020 period in a series of incidents that occurred as follows. First, in August 2019, Ross Township police stopped Mr. Bilicic in his car and recovered crack, heroin, and drug paraphernalia, leading to charges of tampering with physical evidence, possession of a controlled substance, and careless driving. (ECF No. 933, at 2.) Then, in April 2020, local authorities received information that Mr. Bilicic stole two tractors from a Robinson Township Lowe's store. (ECF No. 933, at 2.) Also in April 2020, Mr. Bilicic is alleged to have stolen two cases of drinks from a Get Go gas station in Ohio Township, Pennsylvania, and to have stolen a lawn mower and two tractors from three separate stores in Hampton, Ohio, and Robinson Townships. (ECF No. 933, at 2.) In May 2020, Mr. Bilicic allegedly stole twelve pallets of shingles, collectively worth about $10,988.54, and fourteen bundles of shingles, collectively worth about $5000, from stores in Pittsburgh, Pennsylvania. (ECF No. 933, at 2.) Later that month, Avalon Borough Police observed Mr. Bilicic inside a vehicle parked illegally with two passengers and found quantities of crack and drug paraphernalia in his car. (ECF No. 943, at 2.) As a result, Mr. Bilicic was charged with Prohibited Acts-Possession (M); Prohibited Acts (M); and Prohibited Acts in Specified Places (S). (ECF No. 943, at 2.)

Mr. Bilicic's alleged violations only continued from there. In June 2020, Ross Township police found Mr. Bilicic in his vehicle in response to a police call and again found two bags of heroin and drug paraphernalia in the car, along with admittedly stolen merchandise. (ECF No. 943, at 2.) Mr. Bilicic was charged by summons with Prohibited Acts-Possession (M) and

Prohibited Acts (M). (ECF No. 943.) Later that same month, Police investigated an alleged theft by Mr. Bilicic and another individual from the Grove City Outlet Mall of items valued at $1,472.82, which led to charges of three Counts of Retail Theft. (ECF No. 943, at 2.) Finally, in July 2020, a police officer initiated a traffic stop in which Mr. Bilicic was the driver, and a search of the vehicle recovered two stamp bags of suspected heroin and drug paraphernalia. Mr. Bilicic was charged with Prohibited Acts-Possession (M); Prohibited Acts (M); and Failure to Fasten Load (S). *Id.*

The Probation Office reported that Mr. Bilicic did not alert his probation officer of contacts with law enforcement on 3 separate occasions, even though a supervised release condition required him to do so within 72 hours of any law enforcement contact. (ECF No. 945.) And although a term of Mr. Bilicic's supervised release prohibited him from associating with any persons engaged in criminal activity or convicted of a felony, the Probation Office further reported that the passengers in Mr. Bilicic's car when he was stopped in May 2020 were also criminally charged out of that incident and that one of those same individuals has also been criminally charged for allegedly stealing merchandise from the Grove City Outlet Mall with Mr. Bilicic. (ECF No. 942, at 2.)

Mr. Bilicic also violated the conditions of his release that mandated that he attend therapy treatment, required his participation in the Court's RISE reentry program, and prohibited the use of illegal substances. First, Mr. Bilicic submitted to a urinalysis that tested positive for cocaine and opiates and he admitted using crack cocaine in September 2019. (ECF No. 933, at 3.) Then, he was suspended from the RISE program because of noncompliance in February 2020. (ECF No. 943, at 1.) And finally, Mr. Bilicic stopped attending his therapy treatment at Holy Family Institute in May 2020. (ECF No. 933.)

Based on these events, the Court found that Mr. Bilicic violated the terms of his release that required him to report certain contacts with law enforcement, to participate in and successfully complete the RISE program and a mental health and substance abuse treatment program, to refrain from associating without authorization with any person engaged in criminal activity or who has been convicted as a felon, and to refrain from using nonprescribed controlled substances. (ECF No. 972, at 1.) Accordingly, the Court revoked his supervised release and sentenced Mr. Bilicic to a term of ten months imprisonment, followed by a term of supervised release of six months. (ECF No. 972, at 1.)

## II.  LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

### III. DISCUSSION

After considering the relevant factors, the Court concludes that Mr. Bilicic's motion is properly before it. However, the Court concludes that on the record before it, Mr. Bilicic has not established that his asserted medical conditions constitute "extraordinary and compelling" reasons warranting his release. The Court also concludes that even if Mr. Bilicic had established the existence of such extraordinary and compelling conditions, the required consideration of the § 3553(a) factors counsels the Court to conclude that Mr. Bilicic's custodial sentence remains necessary to protect the public and deter further future criminal conduct, to reflect the seriousness of the offense, to provide just punishment, and to promote respect for the law

#### A. Administrative Exhaustion

As amended, 18 U.S.C. § 3582(c) permits courts to modify sentences "upon the motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, before petitioning a court for relief under 18 U.S.C. § 3582(c), a defendant who is in the custody of the BOP must first file an administrative request for compassionate release with the warden of their BOP facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait 30 days from the date their administrative request was filed with the warden. 18 U.S.C. § 3582(c).

Mr. Bilicic's compassionate release petition does not assert that he has petitioned the BOP for release and does not discuss administrative exhaustion. (ECF No. 975.) The Government's response stipulates that the First Step Act's administrative exhaustion requirement does not apply to Mr. Bilicic because he is currently incarcerated in the Allegheny County Jail

on a U.S. Marshal's detainer and does not have access to BOP administrative remedies. (ECF No. 977.)

Our Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is generally mandatory. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with § 3582(c)(1)(A)'s exhaustion requirement for a defendant in BOP custody); *see also United States v. Alam*, 960 F.3d 831, 933 (6th Cir. 2020) ("Even though [§ 3582(c)(1)(A)'s] exhaustion requirement does not implicate our subject matter jurisdiction, it remains a mandatory condition."). However, a defendant that is not BOP custody is not required to file an administrative request for release with the BOP. *See, e.g.*, *United States v. Burrus*, No. CR 19-284, 2020 WL 3799753, at *3–4 (W.D. Pa. July 7, 2020) (concluding that a defendant in USMS custody exhausted his administrative remedies without filing a request with the BOP because the defendant did not reside in a BOP facility); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *3 (N.D. Ind. June 12, 2020) (concluding that the exhaustion requirement is "waived or excused" when the inmate is in USMS custody because "there is no avenue available to Defendant to first seek administrative relief"); *United States v. Van Dyke*, No. 2:15-CR-0025-JLQ-1, 2020 WL 1811346, at *2 (E.D. Wash. Apr. 8, 2020), *adhered to on reconsideration*, No. 2:15-CR-0025-JLQ-1, 2020 WL 1845553 (E.D. Wash. Apr. 10, 2020) (finding that a defendant in state custody effectively exhausted his administrative remedies because he did not have any administrative path to pursue). Therefore, because Mr. Bilicic is not in BOP custody and cannot access BOP administrative remedies, the statute's administrative exhaustion requirement does not apply to him. Mr. Bilicic's motion is therefore ripe for disposition, even though he has not submitted an administrative request to a BOP Warden. Accordingly, the Court will consider the motion on its merits.

## B. Extraordinary and Compelling Reasons

Next, the Court must determine whether Mr. Bilicic's medical conditions, combined with the ongoing COVID-19 pandemic, rise to an "extraordinary and compelling" level so that release might be warranted under § 3582(c)(1)(A)(i). Section 3582 does not define the phrase "extraordinary and compelling reasons." *Id.* Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but has not updated the applicable Policy Statement, found in the U.S. Sentencing Guidelines Manual ("the Guidelines") § 1B1.13, since the First Step Act became law. *See United States v. Rodriguez*, --- F. Supp. 3d ----, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).

Although the relevant portions of the Guidelines are both advisory and predate the passage of the applicable provisions of the First Step Act, they do provide some initial benchmarks for the Court's consideration. *See id.* at *4 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'") (quoting *Beck*, 425 F. Supp. 3d at 582). For example, the Policy Statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

8

Relevant here, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two different types of medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish a defendant's ability to provide self-care within the correctional environment. *Id.* Because Mr. Bilicic does not assert that he suffers from any medical conditions that are terminal, he appears to argue that his medical conditions qualify under the "non-terminal option" as conditions that substantially diminish his ability to provide self-care while incarcerated. (ECF No. 210, at 4-5.)

Mr. Bilicic argues that his release is warranted because he suffers from Chronic Obstructive Pulmonary Disease ("COPD"), a condition that he argues raises his risk of contracting severe illness from COVID-19. (ECF No. 975.) COPD is a chronic condition that causes breathing difficulty. *See Basics About COPD*, Ctrs. For Disease Control and Prevention (last accessed March 1, 2021) https://bit.ly/2MJiqYm. The CDC has identified COPD as one of the specific conditions that "does" increase a person's risk of severe COVID-19 illness. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Feb. 22, 2021) https://bit.ly/2PtfCzB ("Having COPD . . . is known to increase your risk of severe illness from COVID-19"). Therefore, were Mr. Bilicic to support his claim that he suffers from COPD, that condition could constitute an extraordinary and compelling reason that might warrant his release.

But Mr. Bilicic's medical records provide insufficient support for his claim that he suffers from COPD. First, as the Government notes, the timing of Mr. Bilicic's self-reported COPD to prison medical staff at least invites closer scrutiny of those records. Mr. Bilicic did not submit any medical documents in support of his initial motion, which was filed on December 28, 2020, and the Government's response on January 11, 2021 opposed compassionate release partially

because Mr. Bilicic had provided no evidence of a COPD diagnosis. (ECF Nos. 975; 977.) The Court then entered an Order on January 13, 2021, authorizing the submission of medical records to support Mr. Bilicic's motion. (ECF No. 979.) The AJC medical records that Mr. Bilicic submitted pursuant to that Order direct the Court to sections of those records describing a January 18, 2021 clinic visit during which Mr. Bilicic self-reported a COPD diagnosis. (ECF Nos. 982; 983, at 2.) Noting that Mr. Bilicic's clinic visit occurred after the Government's brief arguing that his petition should be dismissed for lack of supplemental documentation, the Government argues that Mr. Bilicic used this visit to attempt to "manufacture" the supplemental records required to support his claim that he suffered from COPD. (ECF No. 989, at 7-8.)

But regardless of Mr. Bilicic's motive for his January 2021 clinic visit, the records supplied from that visit simply do not confirm his claimed COPD diagnosis. Mr. Bilicic's medical records report that AJC medical personnel examined Mr. Bilicic for a complaint described as "sob/wheezing-copd," and describe Mr. Bilicic as a patient with a "self-reported [history]" of COPD (ECF No. 983, at 2) (abbreviated notation describing Mr. Bilicic as a "pt with copd by his self-reported hx"). The visit summary also noted that the patient had a "30 pack/yr smoking [habit]" and had experienced wheezing and shortness of breath. Finally, the records note that Mr. Bilicic reported that he has used his wife's inhaler when not incarcerated but had had no treatment while incarcerated. (ECF No. 983, at 2.) The records show that the physician prescribed Mr. Bilicic a Ventolin inhaler as a result of this visit, to be used multiple times daily. (ECF No. 983, at 3). Another section of the medical records simply repeats the notation

describing the same January 18, 2021 visit by similarly mentioning COPD to say only that Mr. Bilicic self-reports a history of COPD.[1]

These references to COPD in Mr. Bilicic's medical records do not establish a COPD diagnosis. Although the physician noted that the symptoms of which Mr. Bilicic complained were "consistent with" his self-reported diagnosis, the brief notes do not show that the physician independently confirmed that diagnosis. The noted treatment plan for Mr. Bilicic's shortness of breath is also inconclusive as evidence of a COPD diagnosis, because Ventolin can also be prescribed for less severe conditions, like asthma. *Approved Uses*, Ventolin HFA (Albuterol Sulfate Inhalation Aerosol), Ventolin.com. Asthma appears only on the CDC's list of conditions that "might" increase one's risk of contracting severe illness from COVID-19, and Courts have repeatedly found increased risk of severe COVID illness caused by asthma to be insufficient alone to establish extraordinary and compelling reasons. *See, e.g.*, *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *3, 2020 U.S. Dist. LEXIS 129218, at *9 (W.D. Pa. July 20, 2020); *United States v. Payne*, No. CR 18-57, 2020 WL 5983071, at *1 (W.D. Pa. Oct. 8, 2020).

Finally, another notation in Mr. Bilicic's medical records complicates his claim of longstanding respiratory problems: An August 29, 2020 physical assessment report checks the "no" box under a question asking whether the Mr. Bilicic had asthma, and also checks boxes signifying that Mr. Bilicic's respirations were "[e]ven, unlabored, and normal rate" and his "lung sounds clear and equal in all lung fields." (ECF No. 983, at 33.) While inconclusive, a prior examination finding nothing wrong with Mr. Bilicic's lung functioning and reporting no

---

[1] In full, the notation mentioning COPD is as follows: "H and P c/w pt with copd by his self-reported hx and has objective scant end exp wheezes on exam so will rx KOP Ventolin . . . ." (ECF No. 982 at 2, 21.) The Court interprets the substance of this abbreviated notation as follows: "[History] and [physical] [consistent with] [patient] with COPD by his self-reported [history] and has objective scant end [expiratory pressure] wheezes on exam so will [prescribe] KOP Ventolin. . . ."

11

complaints from Mr. Bilicci regarding his breathing – or requests for an inhaler, which he later reported previously using when not incarcerated – does not confirm Mr. Bilicic's self-reported history of longstanding chronic pulmonary disease.

The Third Circuit has noted that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). A defendant's motion must therefore move beyond citing national COVID-19 statistics, asserting generalized statements regarding conditions of confinement in the BOP, or making sweeping allegations about a prison's ability or inability to contain an outbreak. *United States v. Graham*, No. 12-cr-184, 2020 WL 3053106, at *4 (W.D. La. June 8, 2020) (citing *Raia*). Here, the Defendant has failed to make the type of particularized showing that *Raia* requires. Mr. Bilicic's medical records establish only that he has complained of shortness of breath once while incarcerated, and that AJC medical personnel appropriately treated him for that shortness of breath with an inhaler prescription. He has failed to show that he is not receiving proper treatment for the medical symptoms that he is experiencing, and he has failed to establish that his risk of contracting severe illness from COVID-19 is any different than that of the inmate population at large. The Court therefore concludes that Mr. Bilicic has failed to establish the existence of extraordinary and compelling reasons that might warrant his release under § 3582(c)(1)(A).

### C. Section 3553(a) Factors

Even if Mr. Bilicic had established the existence of extraordinary and compelling circumstances, the Court would still deny his petition based on a consideration of the § 3553(a) factors. When a court does find that an "extraordinary and compelling" reason could warrant a defendant's release, it still must consider whether release is appropriate given the factors set

forth in § 3553(a). In considering the section 3553(a) factors, a court "should assess whether those factors outweigh the 'extraordinary and compelling' reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, ---F. Supp. 3d ---, 2020 WL 1940809, at *10 (W.D.N.Y., Apr. 22, 2020). The Third Circuit has confirmed that the determination of whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. *United States v. Jones*, No. 12-cr-38, 2020 WL 3871084, at *4 (W.D. Pa July 8, 2020) (citing *United States v. Pawlowski*, ---F.3d ---, 2020 WL 428103, at *2 (3d Cir. June 26, 2020)). Mr. Bilicic's brief motion does not discuss the § 3553(a) factors. (ECF No. 975.) But the Government's response argues that the § 3553(a) factors continue to support the sentence the Court originally imposed because Mr. Bilicic violated the terms of his supervised release multiple times over a twelve-month period, and because Mr. Bilicic has an extensive and recent history of drug and theft-related offenses. (ECF No. 977).

The Court concludes that multiple § 3553(a) factors weigh against Mr. Bilicic's release, including the need for the original sentence to adequately deter criminal conduct and to protect the public from the defendant's further crimes, to provide justice punishment, and to promote respect for the law. First, Mr. Bilicic violated the conditions of his release by failing to report contacts with law enforcement that resulted from his allegedly consistent course of criminal activity between August 2019 and July 2020. As discussed above, law enforcement discovered admittedly stolen merchandise in Mr. Bilicic's vehicle once, and allegedly discovered illegal drugs and drug paraphernalia in Mr. Bilicic's vehicle 4 separate times. Mr. Bilicic is also accused of stealing riding mowers, tractors, and shingles, from seven stores on 7 separate occasions, with

the merchandise value of the accumulated goods he is accused of stealing estimated to total $27,430.27.

The record shows that Mr. Bilicic admitted possessing stolen merchandise during a June 2020 traffic stop. Otherwise, these alleged criminal activities have led to state charges that the Court understands to still be pending, as counsel has not informed the Court whether they have been resolved by guilty plea or conviction. But as a result of the incidents underlying these allegedly criminal activities, Mr. Bilicic has certainly violated certain supervised release terms. First, although the terms of Mr. Bilicic's supervised release required him to report contact with law enforcement within 72 hours of that contact occurring, the Probation Office reported that Mr. Bilicic did not alert his probation officer of contacts with law enforcement on 3 separate occasions. (ECF No. 945.) And although the terms of Mr. Bilicic's supervised release prohibited him from associating with any persons engaged in criminal activity or convicted of a felony, the Probation Office further reported that the passengers in Mr. Bilicic's car when he was stopped in May 2020 were also criminally charged out of that incident. (ECF No. 942, at 2.)  Mr. Bilicic was also later found with one of those same individuals when he allegedly stole merchandise from the Grove City Outlet Mall, and that person was also criminally charged for that incident. (ECF No. 942, at 2.)

Mr. Bilicic failed to comply with other important terms of his supervised release. As described above, Mr. Bilicic violated his supervised release conditions by submitting positive urinalysis tests and admitting to using crack, by failing to comply with and successfully complete the RISE program in which he was enrolled, and by failing to attend his required treatment at Holy Family Institute. The Court thoroughly considered Mr. Bilicic's failures to comply with his supervised release conditions when it granted the petition to revoke that release in October 2020.

Mr. Bilicic has not now pointed to any evidence that would steer the Court to conclude that the circumstances have materially changed and that the § 3553(a) factors no longer support the remainder of his custodial sentence. Instead, Mr. Bilicic's record of prohibited conduct shows that release at this time would undermine the sentencing goals of protecting the public and deterring further future criminal conduct, reflecting the seriousness of the offense, providing just punishment, and promoting respect for the law.

The Court thus concludes that even if Mr. Bilicic had established extraordinary and compelling reasons for sentence reduction, a consideration of the § 3553(a) factors leads to the conclusion that the sentence imposed remains "sufficient, but not greater than necessary" to accomplish these goals.

### IV.     CONCLUSION

The Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). Because Mr. Bilicic lacks access to BOP administrative remedies, the Court finds that § 3582(c)(1)(A)'s administrative exhaustion requirements do not apply to him and that his Motion is properly before it. But although Mr. Bilicic asserts that he has COPD, allegedly putting him at higher risk of contracting severe illness from COVID-19, the Court finds that he has failed to support this allegation with sufficient documentation establishing a COPD diagnosis. As a result, Mr. Bilicic has failed to show an "extraordinary and compelling" reason that could justify his release. And even if Mr. Bilicic had established an extraordinary and compelling reason that might warrant his release, the record before the Court compels the conclusion that is not appropriate at this time because Mr. Bilicic remains a risk to the community when considering the § 3553(a) factors. Thus, the Defendant's Motion for

Modification of Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) at ECF No. is DENIED without prejudice subject to its reassertion should circumstances warrant.

An appropriate Order will issue.

<u>s/</u>Mark R. Hornak

Mark R. Hornak
Chief United States District Judge

Dated: March 3, 2021

cc: All counsel of record